# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Criminal Case No. 19-cr-491-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**JASON RENANDER,**

    Defendant.

---

# ORDER AFFIRMING MAGISTRATE JUDGE'S DETENTION ORDER

---

The Government charges Defendant Jason Renander ("Renander") with three counts of producing child pornography in violation of 18 U.S.C. § 2251(a) & (e), and one count of transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1) & (b)(1). (*See* ECF No. 1.)

On December 4, 2019, U.S. Magistrate Judge Scott T. Varholak ordered that Renander be detained pending trial. (ECF No. 13.) That prompted the motion currently before the Court, namely, Renander's Motion for Revocation of Detention Order ("Motion"). (ECF No. 20.) For the reasons explained below, the Court denies the Motion.

## I. DETENTION PRESUMPTIONS & STANDARD OF REVIEW

**A.    Initial Standard**

The Court "shall order the detention of the [defendant] before trial" if the Court finds, after a hearing, "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person

and the community." 18 U.S.C. § 3142(e)(1).  "Subject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed * * * an offense involving a minor victim under section[s] . . . 2251 [or] 2252A(a)(1) . . . of [title 18 of the U.S. Code]."  *Id.* § 3142(e)(3)(E).  This presumption applies to Renander given the charges against him.

"Once the presumption is invoked, the burden of production shifts to the defendant.  However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.  The defendant's burden of production is not heavy, but some evidence must be produced."  *United States v. Stricklin*, 932 F.2d 1353, 1354–55 (10th Cir. 1991)

"The facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."  *Id.* § 3142(f)(2).  As for risk of flight, the burden is preponderance of the evidence.  *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).  The Government bears the burden in both cases.  *Id.*

The factors the Court "shall" consider when deciding whether to grant pretrial release are:

> (1) the nature and circumstances of the offense charged, including whether the offense . . . involves a minor victim . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). Also, the presumption of detention, even if countered by the defendant with adequate evidence, "remains a factor for consideration by the district court in determining whether to release or detain." *Stricklin*, 932 F.2d at 1355.

**B.    Review**

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the [district court], a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The district judge then reviews the magistrate judge's decision *de novo*. *Cisneros*, 328 F.3d at 616 n.1.

> *De novo* review, however, does not necessarily mean holding an evidentiary hearing. Although a district court may start from scratch and take evidence, it may also review the evidence that was before the magistrate judge and make its own independent determination as to whether the magistrate judge's findings and detention order are correct. This is a matter of discretion for the district court.

*United States v. Romero*, 2010 WL 11523871, at *2 (D. Colo. May 17, 2010) (internal quotation marks and citations omitted).

3

## II. BACKGROUND

Having reviewed the indictment (ECF No. 1), the pretrial services report (ECF No. 19), the detention hearing transcripts (ECF Nos. 22 & 23), the Motion (ECF No. 20), and the Government's response (ECF No. 26), the Court finds the following to be an accurate statement of facts as they relate to the question of whether Renander should be detained pending trial.

In early 2013 or thereabouts, Renander hid his cell phone in the bathroom of his home in Parker, Colorado, and thereby captured video and/or still images of a preteen or young teenage girl taking a shower. The Government designates the victim "Minor #2" and the video/images of her form the basis of Count 2 of the indictment.

In approximately the summer of 2014, Renander again hid his cell phone in the bathroom of his home and captured video and/or still images of a different preteen or young teenage girl taking a shower. The Government designates the victim "Minor #3" and the videos/images of her form the basis of Count 3 of the indictment.

In December 2014, Renander hid his cell phone in a bathroom of a home or apartment where Renander was staying in Steamboat Springs. Specifically, the phone was hidden inside a cologne box with a hole cut in it for the phone's camera. A preteen or young teenage girl known as "Minor #4" noticed the cologne box just after taking a shower. She opened it, discovered the phone, and saw that the phone had been recording video of her in the shower. She reported this to Renander's wife, who examined the video and then confronted Renander. Renander somehow convinced his wife that the incident had been an innocent mistake.[1]

---

[1] Due to evidentiary problems, the Government has not charged Renander with any crime arising from this incident.

Shortly afterward, Renander purchased a special video camera concealed in a towel hook. He installed it in his home bathroom and used it to capture at least one video of a preteen or young teenage girl taking a shower. The Government designates this girl as "Minor #1" and this video forms the basis of Count 1 of the indictment.

In mid-2016, Renander's wife discovered pornographic pictures of Minor #1 on Renander's laptop. From the angle of the pictures, she located camera concealed in the towel hook. She seized the device and again confronted Renander. It is not clear what Renander said in response, but his wife took no action other than to destroy the camera.

In mid-August 2018, federal agents discovered an online repository of child pornography that included videos of the girl known as Minor #3. One of those videos showed Minor #3 before disrobing to take a shower, and she was wearing a sweatshirt with the name of a particular Colorado middle school. This is the clue that set the agents on the trail that eventually led to Renander.

However, in late August 2018—while the investigation was just beginning, and before Renander knew anything about it—Renander communicated via Instagram Messenger with a still-unknown person ("Recipient") who had established an Instagram page devoted mostly to pornographic photos of Minor #1. Recipient asked Renander if he had any pornographic videos of Minor #1. Renander had videos on his phone, and he transmitted three of them to Recipient. This transmission forms the basis of Count 4.

On November 2, 2018, federal agents executed a search warrant on Renander's home in Parker and seized all digital devices. Renander gave a noncustodial interview to the agents and essentially admitted his crimes, but the agents did not then arrest him.

That night, Renander went to the Douglas County Library and used a library

computer to tell Recipient that he had been "busted," and then to delete his (Renander's) Instagram account. The following day, he deleted a Yahoo account that also had some relationship to his child pornography production and/or trafficking.

As far as the record reveals, none of the minor victims were related to Renander, but Renander and his wife have a daughter that was approximately five years old at the time the search warrant was executed. Soon after the warrant was executed, a dependency and neglect ("D&N") case was filed in Douglas County against Renander. Renander was ordered not to live in the same home as his daughter. He therefore moved in with his parents in Sedalia, Colorado. Renander was also ordered to begin sex offender counseling. He did so and regularly attended counseling sessions with Dr. Rick May, a psychologist who has been certified by the Colorado State Sex Offender Management Board. Eventually the D&N judge permitted Renander to move back to his home to live with his wife and daughter, although he could not have unsupervised contact with his daughter.

Also soon after the search warrant was executed, Renander retained his current defense attorney, who began communicating regularly with the U.S. Attorney's Office. Renander's attorney convinced the case agent to permit Renander to surrender voluntarily once any arrest warrant was signed. Due to evidentiary complexities and the need for additional investigation (apparently there was some question whether the Government could prove that the videos had been produced in the District of Colorado), the Government did not indict Renander until November 21, 2019. An arrest warrant issued, and, per the agreement between the case agent and Renander's counsel, Renander surrendered to the U.S. marshals the following morning.

Judge Varholak held a detention hearing on November 27, 2019. (ECF No. 22.)

Renander's counsel's primary argument was that Renander had not fled in the year since the search warrant was executed, but instead cooperated fully with the requirements of the D&N court, and Dr. May had written a letter for counsel stating that he now deemed Renander to be a low risk for reoffending.

Judge Varholak stated that he needed to consider the case further, but he certainly would not permit Renander to live under the same roof as his daughter. Judge Varholak therefore ordered Pretrial Services to investigate whether Renander's parents would be willing to disconnect all Internet access from their home and then allow Renander to live there again. Judge Varholak continued the hearing to December 4, 2019.

At the continued hearing, Judge Varholak announced that Renander's parents were willing to give up all Internet access at their home (including exchanging their smart phones for flip phones) and thereby accommodate their son. Judge Varholak, however, ultimately concluded that the risk of reoffending was too high to allow Renander to remain in the community, particularly considering that his wife had twice caught him and yet Renander did not change his ways either time.

### III. ANALYSIS

Neither side has requested a hearing and the Court finds that it need not hold a hearing in any event. The Court will now proceed to the factors it must consider per 18 U.S.C. § 3142(g).

**A.** **"[T]he nature and circumstances of the offense charged, including whether the offense . . . involves a minor victim"**

The offenses involve minor victims and are extremely serious. Renander is not charged with possessing or sharing child pornography that he found on the Internet. He

7

is charged with *producing* the images himself, and then sharing them. The parties agree that Renander is therefore facing a minimum sentence of 15 years.

Moreover, although the details are hazy, it appears that Renander's home was perceived by multiple preteen or teenage girls as a "safe space," such that they felt comfortable showering there. Renander violated that trust to satisfy his own desires, and then the desires of others.

**B.     "[T]he weight of the evidence against the person"**

The weight of the evidence appears strong. Although the Government bears the burden in these proceedings, it is nonetheless notable that Renander offers no reason for the Court to conclude that the evidence is not as strong as the Government represents.

**C.     "[T]he history and characteristics of the person"**

   1.   <u>"[T]he person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, [and] community ties . . ."</u>

As noted above, Renander has shown a willingness to to act deceptively and surreptitiously to gratify his own sexual desires. His psychologist says that he has made progress and is now a low risk of reoffending, but the psychologist's letter is not itself in the record, the psychologist did not testify before Judge Varholak, and the basis for his opinion is otherwise unclear.

However, Renander appears to have strong family ties in the local community, specifically, to his wife, his daughter, and his parents.

The pretrial services report says that he is a senior manager with Comcast. His monthly income (before his arrest and detention) is unknown. His length of residence in the community is likewise unknown.

2. "[T]he person's . . . past conduct . . ."

Renander was in his mid- to late 30s when he committed the charged conduct. As described, he was twice found out by his wife. The first time, he managed to talk his way out of it and then set up a concealed camera. The second time, it is unclear if he stopped creating images, but he did not stop communicating with at least one person interested in the images (Recipient), nor did he cease to distribute those images. That distribution took place in late August 2018, a little more than two months before federal agents executed a search warrant on his home.

Given that Recipient had established an Instagram page devoted to pictures of Minor #1 before August 2018, it is safe to assume that the transmission to Recipient in August 2018 was not the only time Renander had transmitted his images and videos of Minor #1. It is likewise safe to assume that his criminal conduct has been more extensive than what the Government believed it had probable cause to charge.

3. "[T]he person's . . . history relating to drug or alcohol abuse . . ."

Nothing in the record addresses this factor.

4. "[T]he person's . . . criminal history . . ."

Renander's criminal history is minor and his most recent prior offense is twenty years old.

5. "[T]he person's . . . record concerning appearance at court proceedings"

Renander appeared as required for his D&N proceedings in Douglas County. He also self-surrendered to the U.S. marshals, leading to his current detention.

6. <u>"[W]hether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law"</u>

Renander was not on probation, parole, or other similar release pending trial, but he was subject to orders of the Douglas County court in the D&N proceeding. He has obeyed those orders and was eventually permitted to move back in with his wife and daughter, although still subject to restrictions.

**D.  "[T]he nature and seriousness of the danger to any person or the community that would be posed by the person's release"**

The danger to persons in the community, should Renander be released, is that he would find new ways of, at a minimum, accessing child pornography, if not surreptitiously creating and distributing it. The danger is extremely serious. Every time child pornography is accessed and viewed, the victim is, in essence, re-victimized.

**E.  Synthesis**

Renander's conduct between the execution of the search warrant and his self-surrender shows there is little risk he will flee. Therefore, the question is whether the Government has presented clear and convincing evidence that Renander continues to present a danger to the community. Upon *de novo* review, the Court agrees with Judge Varholak that the Government has met its burden to show that Renander continues to present a danger to the community. This is so for two principal reasons.

First, as noted, the offenses of production and distribution of the produced images are extremely serious. Even without any context unique to an individual defendant, they imply a relatively brazen criminal disposition. The details of Renander's case show that he possessed that disposition in spades.

Second, Renander had two opportunities (before the Government discovered his

actions) to reform his ways and regain the trust of his spouse.  He did not.  After the first opportunity, he instead doubled down with a device that can have no legitimate purpose (a camera-concealing towel hook).  After the second opportunity, he may have stopped producing images—the record is unclear—but he did not delete them and he did not stop sharing them.  Then, after the Government seized his digital devices pursuant to the search warrant, he immediately found an alternative method of accessing the Internet and used it to try and cover his tracks.  True, in the year between the search warrant and his arrest, there has been no report of further criminal or suspicious conduct, but Renander's past actions convince the Court there is a high risk that he has committed or could commit an offense and conceal it.  He was a senior manager at Comcast, for example, suggesting more familiarity with telecommunications infrastructure than the average person.

The Court recognizes that Renander's parents are willing to allow him to live with them in an Internet-free home.  But there is no such thing as an Internet-free home anymore unless that home is well out of range of anyone else's Wi-Fi router *and* any cellular data signal.  The fact that Renander's parents are willing to surrender their smart phones for flip phones shows that they were using their smart phones at home, and therefore their home is within reach of a cellular data signal.  Moreover, cellular devices are usually small and easily concealed.  Living with his parents and being subject to random searches by Pretrial Services is therefore not a combination of conditions that can reasonably ensure the community's safety.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Renander's Motion for Revocation of Detention Order (ECF No. 20) is DENIED;

11

and

2. The Order of Detention (ECF No. 13) is AFFIRMED.

Dated this 7th day of January, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge